Filed 4/16/13  In re Marie B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MARIE B., a Person Coming Under the Juvenile Court Law. | D063055 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. NJ14254) |
| v. | |
| L.V., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner.  Affirmed.

L.V. appeals an order continuing juvenile court jurisdiction in the dependency case of her daughter, Marie B.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2008, when Marie's older sister, A.B., was three weeks old, she died as a result of nonaccidental injuries. A.B.'s autopsy showed she had brain and retinal hemorrhages, multiple bruises and broken ribs. Her father, Christopher B., and L.V. were her only caretakers. Christopher admitted playing roughly with A.B. and that he had caused her death. L.V. denied that she or Christopher had harmed A.B.

L.V. and Christopher were employed by the United States Marine Corps. Christopher had been deployed to Iraq four times during the past eight years and, before A.B. was born, he had been on deployment for seven months.

Marie was born one year after A.B.'s death in December 2009. The San Diego County Health and Human Services Agency (the Agency) petitioned on her behalf under Welfare and Institutions Code section 300, subdivision (f),[1] alleging Christopher and L.V. had caused A.B.'s death through abuse or neglect. The court found the allegations true, declared Marie a dependent child of the court, removed her from parental custody and placed her in relative care. It ordered reunification services for L.V., but ordered she live separately from Christopher. It denied services for Christopher.

This court reversed the order denying Christopher reunifications services, holding the juvenile court had abused its discretion by denying him services while ordering them for L.V. This court reasoned that since L.V. was strongly allied with Christopher and it was anticipated that she would reunite with Marie, the danger to Marie potentially could

---

[1]     All further statutory references are to the Welfare and Institutions Code.

be reduced if Christopher along with L.V. participated in services to address the serious protective issues that had caused A.B.'s death.  (*In re Marie B.* (Sept. 22, 2010, D057312) [nonpub. opn.].)

In December 2010, the juvenile court ordered services for both parents.  L.V. and Christopher maintained separate residences as required by the court, but saw each other several times each week. They had regular, loving visits with Marie.  Christopher's psychological evaluation and history revealed he had problems with anger, but he did not see a reason for treatment.  L.V.'s evaluation showed she was highly dependent on Christopher and was in denial as to the causes of A.B.'s death.  L.V.'s therapist reported L.V. had difficulty expressing negative emotions so that she could grieve for A.B.

At the six-month review hearing in June 2011, the court continued services and permitted L.V. to begin overnight visits with Marie on the condition Christopher not be in the home.  Christopher was allowed unsupervised contact with Marie in the home of the maternal grandparents.

L.V. began overnight visits with Marie in October 2011.  At the 12-month review hearing in January 2012, the court continued services and continued Marie in relative care.

In March 2012, Marie began a 60-day trial visit with L.V.  Both parents continued as active duty Marines.  They both had extensive therapy, and Christopher completed a 52-week child abuse/safe parenting class.  In April, the court ordered Marie placed with L.V. and gave the social worker discretion to allow L.V. to supervise Christopher's visits with Marie.

3

In September 2012, L.V. ended her career in the Marine Corps. Christopher remained on active duty with court martial proceedings pending concerning A.B.'s death. Both parents were participating in in-home parenting education and hoped they would be able to reunite as a family.

The social worker recommended the court continue jurisdiction based on Marie's young age, the severity of the original protective issue, Christopher's refusal to discuss A.B.'s death in therapy, L.V.'s position regarding A.B.'s death and the parents' limited parenting experience.

At the family maintenance review hearing in November 2012, it was stipulated that if Christopher were to testify he would state his military proceedings had been continued and no trial date had been set, maintaining two households had been a financial hardship and he had been actively participating in parenting Marie. An investigator for minor's counsel would state that during a 30-minute visit she observed Marie as happy and comfortable with both parents. After considering the evidence presented and argument by counsel, the court ordered Marie placed with both parents, continued dependency jurisdiction and set the next family maintenance hearing in six months.

DISCUSSION

L.V. contends the court erred by continued jurisdiction in the case. She argues there were no remaining protective issues; the court had found no risk to allowing Christopher to live in the home; she had safely supervised Christopher's visits with Marie; and Marie had thrived in her care for eight months.

4

Under section 364, subdivision (c) and California Rules of Court, rule 5.710(b)(1), if the court determines the child may safely be returned to the parent, it terminates jurisdiction unless the social worker establishes that conditions still exist that require supervision. "The court shall terminate its jurisdiction unless the [social services agency] establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c); *Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 304.) If the court determines continued supervision is required, it continues the matter for six months, at which time it holds a review hearing. (§ 364, subd. (d); Cal. Rules of Court, rule 5. 710 (b)(1).)

A juvenile court's decision whether to continue jurisdiction is reviewed under the substantial evidence test. (*In re N.S.* (2002) 97 Cal.App.4th 167, 172.) A reviewing court must uphold a juvenile court's findings and orders if they are supported by substantial evidence. (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1036-1037.) "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also ' . . . view the record in the light most favorable to the orders of the juvenile court.' " (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.) The appellant bears the burden to show the evidence is insufficient to support the court's findings. (*In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 420.)

Substantial evidence supports the juvenile court's decision to continue jurisdiction for an additional six months. A.B. died in December 2008 while in the care of her parents. The juvenile court found allegations true under section 300, subdivision (f), and

5

Christopher admitted causing her death. His psychological evaluation and history showed he had problems with anger, but did not see a reason for treatment. After participating in services, he admitted that at the time of A.B.'s birth he needed to have better parenting skills, including having more patience. L.V. continued to depend on Christopher and had a difficult time accepting his role in A.B.'s death. Both parents had limited parenting experience in that Marie had been in the care of the maternal grandparents for much of her life. Also, Marie was a very young child and thus especially vulnerable. L.V. has not shown a lack of substantial evidence to support the court's finding that it was in Marie's best interests to continue dependency jurisdiction.

DISPOSITION

The order is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

McINTYRE, J.

IRION, J.

6